AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: _____

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

**FILED**

SEP 2 2022

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

AN APPLE IPHONE (BLUE IN COLOR, MODEL: IPHONE 12, IMEI: 357504274577691), CURRENTLY LOCATED AT THE HSI OKLAHOMA CITY OFFICE

)
)
)
)
)
)

Case No. M-22- 652 -P

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | *Offense Description* |
|---|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy | |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

CLIFFORD KINSLER, TFO, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/2/22__

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

GARY M. PURCELL, U.S. Magistrate Judge
*Printed name and title*

**<u>ATTACHMENT A</u>**

The property to be searched is an Apple iPhone (blue in color, Model: iPhone 12, IMEI: 357504274577691) hereinafter the "Device" The Device is currently located in secure evidence storage at the HSI Oklahoma City office. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.







# ATTACHMENT B

## Particular Things to be Seized

1. Evidence relating to violations of 21 U.S.C. § 846, conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance. Specifically, records relating to:

   a. Any and all images, videos, and any other digital media content of co-conspirators, assets, or illegal drugs;

   b. call logs, address books, GPS data, internet access, IP accounts, text messages, and email accounts;

   c. lists of customers and related identifying information;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording Beatrice SIMONDS and Donovan WALTERS schedule or travels from June 1, 2022, to the present;

   g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited,



or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

Records documenting the use of the Internet Protocol addresses to communicated with e-mail servers, internet sites, and social media, including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate any evidence, fruits, and instrumentalities of violations of the above-listed federal criminal statutes. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who



may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

**IN THE MATTER OF THE SEARCH
OF AN APPLE IPHONE (BLUE IN
COLOR, MODEL:  IPHONE 12, IMEI:
357504274577691), CURRENTLY
LOCATED AT THE HSI OKLAHOMA
CITY OFFICE**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, Clifford Kinsler, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession and further described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.  I have been employed by The

Oklahoma Highway Patrol (OHP) since 2013; assigned to OHP Special Investigations since 2018; and presently assigned as a Task Force Officer with Homeland Security Investigations (HSI) to the HSI office in Oklahoma City, OK (HSIOC).

3.    I have been involved in a wide variety of investigative matters. Among other responsibilities, I am responsible for conducting investigations into violations of state and federal criminal laws, including the manufacturing and possession of controlled substances with the intent to distribute. I have received approximately 20 weeks of specialized training at the Oklahoma Highway Patrol Academy in the enforcement of state and federal laws. I have arrested, interviewed, and debriefed numerous individuals who have been involved in and have personal knowledge of transporting and concealing controlled substances, as well as the amassing, spending, converting, transporting, distributing, laundering, and concealing of proceeds from drug trafficking and smuggling. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the smuggling and trafficking of contraband, including controlled substances. I have been the affiant on numerous search warrants, including warrants relating to drug smuggling and the unlawful possession of firearms and ammunition. I have coordinated the execution of search and arrest warrants, conducted physical surveillance, analyzed records documenting the purchase

2

and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law-enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute drugs.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is an Apple iPhone (blue in color, Model: iPhone 12, IMEI: 357504274577691), hereinafter the "Device." The Device is currently located in secure evidence storage at the HSI Oklahoma City office.   The Device is described in more detail in Attachment A hereto. Based on the facts set forth below, I believe there is probable cause to believe that the Device contains evidence of a violation of 21 U.S.C. § 846, conspiracy

to commit possession of a controlled substance with intent to distribute, as described further in Attachment B (description of items to be seized).

7.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## BACKGROUND REGARDING CELLULAR DEVICES

8.     Based upon my training and experience, I am aware that individuals involved in drug trafficking in large quantities are often involved in smuggling drug proceeds.  These individuals often use cell phones and other similar electronic devices, such as tablets and computers, to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal drugs. Such devices and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos. Based upon my training and experience, I know that most drug trafficking—and particularly high-level drug trafficking—is coordinated via cell phones and similar electronic devices.  Conspirators use these devices to, *inter alia*, make requests for drug purchases, provide information on price, and set up places to meet for transactions. Consequently, the cellular telephones and

4

similar electronic devices of individuals involved in this drug conspiracy will likely contain evidence of such illegal activity.   Therefore, I submit that there is probable cause to believe that the Device was used in furtherance of this drug-trafficking conspiracy and will contain evidence of the same.

## PROBABLE CAUSE

9.      On August 23, 2022, Enforcement Teams with U.S. Customs & Border Protection (CBP) located in Saint Thomas, Virgin Islands, were screening United States Postal Service (USPS) outbound mail and observed an anomaly in the x-ray of a package.   The anomaly was consistent with known methods when trying to smuggle contraband in packages being shipped to the United States.   The package was further inspected by CBP Officers to determine if illegal contraband was concealed within the package. The package being inspected was marked with a USPS Priority Mail tracking number of # 9505 5105 5073 2235 4311 40.   The package was a medium sized, brown USPS box, approximately 17 pounds in weight. The box contained used clothing, toys and a speaker. Hidden inside the speaker was a green shirt wrapped around a green saran-wrapped bundle.   The bundle was probed, and white powdery substance was found. This substance was field tested and came back presumptively positive for the characteristics of cocaine.  The approximate weight of the cocaine seized from the package was 1.12 kilograms. Based on my training and experience, I am aware this

amount is more than personal use, because typical individual doses of cocaine are between 3 and 7 grams, and this amount far exceeds that.

10.     CBP officers observed the return address information on the package to indicate the shipper as Jessica TREVOR and the consignee as Harold TREVOR, 2264 NW 54th Street, Oklahoma City, OK 73112. In my training and experience, I am aware that when drugs are being shipped, false or fictitious names are often used for both the shipper and consignee. This is to avoid detection by law enforcement or either party being associated with the shipment of controlled substances. Investigators could not find any information linking the name "Harold TREVOR," which was listed on the package, to 2264 NW 54th Street, Oklahoma City.

11.     On August 29, 2022, investigators prepared the package for a controlled delivery to 2264 NW 54th Street, Oklahoma City.  Investigators placed approximately 580 grams of the original substance, that tested positive for cocaine, back inside the parcel prior to the delivery.  The package was then delivered to 2264 NW 54th Street, Oklahoma City and placed on the front porch.  Within a few minutes of the delivery, the package was taken inside the residence by Beatrice SIMONDS. After several minutes, an anticipatory search warrant previously issued by this court was served at the residence.

12.    After SIMONDS brought the package into the residence, Donovan WALTERS was seen by surveillance teams exit the house, and begin to make phones calls on a cellular device. While on the phone, WALTERS walked around the front yard looking down the roadways that lead to the residence. WALTERS walked toward the front door of the residence and placed the phone into his pant pocket as he walked back into the house.

13.    WALTERS and SIMONDS were located inside of the residence and removed during the execution of the search warrant. WALTERS and SIMONDS were met at the front door by officers when they were removed. When WALTERS was removed from the residence, he was immediately patted down for officer safety, and two cellular devices were located on his person. One cellular device was in each of his pant pockets; specifically, an Apple iPhone, blue in color, model: iPhone 12, with IMEI number 357504274577691, and an Apple iPhone, white in color, model: iPhone X, with IMEI number 353095106340162, were located.

14.    The delivered package was located inside the residence, approximately two to three feet from the doorway of the center bedroom. The package was still sealed.   No other adults were located inside of the residence.

7

15.   Just inside of the center bedroom doorway, law enforcement located two 9 mm caliber pistols in a small plastic file box. This file box was located approximately five to six feet from the delivered package.

16.   Also inside of that center bedroom, officers located WALTERS' passport, identification cards, computer, men's clothing, and several pair of size 10 men's shoes. Also in that center bedroom, officers located a ledger in the nightstand. The ledger contained addresses, dates, and tracking numbers of packages. One of the tracking numbers written in the ledger matched the same tracking number displayed on the delivered package.  In that same nightstand drawer, officers located a small amount of a green leafy substance which field tested positive for marijuana and weighed approximately 2.5 grams.

17.   The residence was determined to be a short-term rental property through "Airbnb." The owners of the property were contacted by investigators, who learned that the property was originally rented out from August 21, 2022, to August 29, 2022, at 11:00 A.M. The owners of the property were contacted the morning of August 29, 2022, and a request was made to extend the rental to August 30, 2022, and the request was granted. The individual who rented through Airbnb and requested the extension was a Brian PETAO.

18.   Through the course of the investigation, it was determined PETAO was not staying at the residence during this time period. The owners of the property also stated that the name "Harold Trevor" has never been a tenant of the property owners.

19.   Both WALTERS and SIMONDS were interviewed at the scene. WALTERS refused to cooperate and answer any questions.

20.   During the interview with SIMONDS, she stated the only people that were staying in the residence were her, her two minor children, and WALTERS. She did not know who rented the Airbnb other than a friend of WALTERS.

21.   SIMONDS stated she did not know anything about the delivered package and wrote "Not at this address" on it.  SIMONDS stated that she was staying in a separate bedroom from the center bedroom, and identified the center bedroom as being used by WALTERS.

22.   SIMONDS admitted to mailing a package to the Virgin Islands from Oklahoma City the week prior to the execution of the search warrant, at the direction of WALTERS. SIMONDS did not know the names on that package, and she was not familiar with the return address. That package had already been sealed when WALTERS turned it over to SIMONDS.

23.     Based on my training and experience, I believe it is likely that the package shipped by SIMONDS to the U.S. Virgin Islands may have contained the proceeds of drug trafficking or payment for drugs received.

24.     Based on my training and experience, I am aware that individuals who smuggle drugs through the mail often search the tracking numbers on postal websites in order to obtain location information of the anticipated arrival of a package.   In this instance, since law enforcement located a ledger containing the tracking number for the instant package, as well as another package, the suspect(s) may have searched those tracking numbers on the USPS website. In order to do so, the suspect(s) would likely have used their computer or cell phone. Thus, a search of the Device may reveal evidence of the user of that Device, as well as evidence that the user searched the tracking number of the package, or other packages consistent with this one intercepted by law enforcement.

## TECHNICAL TERMS

25.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling

10

communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash

memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System

12

(generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer

13

software, giving them many of the same capabilities as personal computers.   For example, PDA users can work with word-processing documents, spreadsheets, and presentations.   PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).   Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.   Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14

26.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, internet outlet with IP Address, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

28.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or

edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

i. Forensic evidence on a device can also indicate who has used or controlled the Device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on the Device is evidence may depend on other information stored on the Device and the application of knowledge about how the Device operates.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l. Further, in finding evidence of how a Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.    *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.    *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.



Respectfully submitted,

_____

CLIFFORD KINSLER
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me on ___September 2___, 2022

_____

HONORABLE GARY PURCELL
United States Magistrate Judge
Western District of Oklahoma

**ATTACHMENT A**

The property to be searched is an Apple iPhone (blue in color, Model: iPhone 12, IMEI: 357504274577691) hereinafter the "Device" The Device is currently located in secure evidence storage at the HSI Oklahoma City office. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



2



3

# ATTACHMENT B

## Particular Things to be Seized

1. Evidence relating to violations of 21 U.S.C. § 846, conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance. Specifically, records relating to:

   a. Any and all images, videos, and any other digital media content of co-conspirators, assets, or illegal drugs;

   b. call logs, address books, GPS data, internet access, IP accounts, text messages, and email accounts;

   c. lists of customers and related identifying information;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording Beatrice SIMONDS and Donovan WALTERS schedule or travels from June 1, 2022, to the present;

   g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited,



or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

Records documenting the use of the Internet Protocol addresses to communicated with e-mail servers, internet sites, and social media, including:

     a.  records of Internet Protocol addresses used;

     b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied, or disclosed pursuant to this warrant in order to locate any evidence, fruits, and instrumentalities of violations of the above-listed federal criminal statutes. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who



may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.